**GARCO INDUSTRIAL EQUIPMENT COMPANY, INC.,**
Plaintiff-Appellant,

v.

**Sherman MALLORY d/b/a Mallory Cement Construction and Sherman Mallory Construction Company, and Indiana Insurance Company, Defendant-Appellee.**

No. 1–285A34.

Court of Appeals of Indiana,
First District.

Nov. 26, 1985.

Rehearing Denied Jan. 9, 1986.

A. David Meyer, Charles N. Doberneck, Buschmann, Carr & Meyer, Indianapolis, Robert M. Gholston, Young, Gholston & Young, Franklin, for plaintiff-appellant.

Robert F. Zoccola, Julia M. Blackwell, Locke Reynolds Boyd & Weisell, Indianapolis, for defendant-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Garco Industrial Equipment, Inc. appeals the trial court's denial of its motion for summary judgment and the granting of summary judgment in favor of Sherman Mallory and Indiana Insurance Company in Garco's attempt to recover on a performance bond. We affirm.

## FACTS

On April 22, 1981, Mallory Construction Company (Mallory) and Indiana Gas Company (Indiana Gas) entered into a contract for the construction of a water line at Indiana Gas' new Danville, Indiana facility. The contract required Mallory to obtain a performance bond in the amount of $43,-800.96, the full amount of the contract. Additional conditions of the agreement, attached to the contract, reiterate this requirement, one specifically stating: "2. Prior to the commencement of the work hereunder, the Contractor shall furnish to the Company a bond covering the faithful performance of this contract and the payment of all obligations arising hereunder. Such performance bond shall be in the amount of $43,800.96 with such surety as is agreeable to both parties." Record at 358A, Exhibit G–1, p. 4. Pursuant to this requirement of the contract, Mallory obtained a performance bond from Indiana Insurance Company (Indiana Insurance) wherein Mallory is named principal, Indiana Insurance is named surety, and Indiana Gas is designated obgligee. The work was to be completed within 120 days.

On June 15, 1981, Mallory entered into an agreement with Harco Leasing Co., Inc. (Harco) to lease a backhoe loader and an excavator. The lease was to run for a sixty (60) month period. Forty-five (45) monthly payments of $4,420.00 were to commence on June 15, 1981, and continue throughout the course of the agreement, with the exception of January, February, and March. Mallory had possession of the equipment from June 1, 1981, through August 6, 1981, and used it on the Danville job. The record indicates that Harco intended to purchase the equipment from Garco but abandoned this intention when Mallory defaulted on its initial lease payment. Record at 87. Subsequently, on June 15, 1981, Harco appears to have assigned all of its rights, regarding the contract with Mallory, to Garco.

Garco repossessed the equipment on August 6, 1981, when Mallory failed to make its first payment and failed to pay several material suppliers. Garco sued Mallory in the Johnson Circuit Court and obtained a default judgment in the amount of $24,-750.51. Thereafter, Indiana Gas paid approximately $40,801.98 on the claims of the various suppliers of materials and was subsequently reimbursed by Indiana Insurance. However, Garco was not paid for the rental of the equipment. On September 16, 1982, Mallory declared bankruptcy and obtained discharge of the judgment debt owed to Garco.

Garco then brought this action against Mallory and Indiana Insurance, as surety, for the value of the construction equipment

over the two month period together with repair costs totaling $24,791.51. Both sides filed motions for summary judgment. The trial court granted Indiana Insurance's motion for summary judgment declaring Indiana Gas to be the sole obligee under the bond and finding no intention in the bond or the contract that the bond should run to the benefit of laborers, materialmen, subcontractors, or lessors of machinery. The court stated that Garco was neither an obligee nor a third party beneficiary under the bond. In addition, the court found that Mallory had not entered into a rental agreement with Garco and therefore Garco was not a party with an enforceable claim under the bond. Appellant then perfected this appeal.

### ISSUE

Whether Garco has any grounds upon which it may recover the rental and repair value of its backhoe and excavator from the performance bond executed by Mallory and Indiana Gas.

### DISCUSSION AND DECISION

A surety's liability is measured by the strict terms of his contract. *Stewart v. Knight & Jillson Co.* (1906), 166 Ind. 498, 76 N.E. 743; 26 I.L.E. *Suretyship* sec. 22 (1960). Usually, a suretyship contract is construed in accordance with the rules governing other contracts. 26 I.L.E. *Suretyship* sec. 23 (1960). Where the suretyship contract is entered into in relation to another agreement, both instruments must be construed together. *National Surety Co. v. Rochester Bridge Co.* (1925), 83 Ind.App. 195, 198–99, 146 N.E. 415, 416, *trans. denied.* While sureties are not "favorites of the law," gratuitous or accommodation sureties are entitled to a strict construction of the contract in their favor, so as not to

impose a greater burden on them than they agreed to. This rule, however, does not apply in the case of a surety for hire. Instead, the contract of a surety for hire is viewed as analogous to an insurance contract,[1] and is construed most strictly against the surety and in favor of the person to be protected. *Knight & Jillson Co. v. Castle* (1909), 172 Ind. 97, 109, 87 N.E. 976, 981; *London & Lancashire Indemnity Co. of America v. Community Savings & Loan Ass'n.* (1936), 102 Ind.App. 665, 675–76, 4 N.E.2d 688, 693; *National Surety*, 183 Ind.App. at 198, 146 N.E. at 416. Therefore, any contractual ambiguities are resolved in favor of the beneficiary. *London*, 102 Ind.App. at 675–76, 4 N.E.2d at 693; *National Surety*, 183 Ind.App. at 198, 146 N.E. at 416.

Usually, only parties to a contract or those in privity with them have the right to recover under a contract. *Gonzales v. Kil Nam Chun* (1984), Ind.App., 465 N.E.2d 727, 729; *State ex rel. Lawson v. Warren Bros. Roads Co.* (1945), 115 Ind. App. 452, 458, 59 N.E.2d 912, 915. Those not a party to a contract may enforce the contract by demonstrating that they are third party beneficiaries who were intended to be protected under the agreement by the imposition of a duty in their favor. *Gonzales*, at 729; *Knight*, 172 Ind. at 101, 87 N.E. at 977. As third party beneficiaries, they may recover under the contract even though they had no knowledge of the agreement at the time it was made. *Knight*, at 101, 87 N.E. at 977. The intent of the parties to benefit the third party is the controlling factor and this may be shown "by specifically naming the third party or by other evidence." *Gonzales*, at 729.

---

1. There are, however, definite differences between insurance contracts and surety contracts. First a contractor does not purchase a performance or payment bond to protect himself from loss. Second, a suretyship involves a third party, the contractor as principal, which creates a basic difference from insurance contracts. Third, the premium on a surety bond is usually paid by the principal although the obligee is the party receiving the protection of the bond. While insurance contracts and suretyships are often viewed as similar, these differences necessitate caution in applying the rules of insurance. Cushman, *Surety Bonds on Public and Private Construction Projects*, 46 *A.B.A.J.* 649 (1960); *Meyer v. Building and Realty Service Co., Inc.* (1935), 209 Ind. 125, 133–34, 196 N.E. 250, 253–54.

In Indiana, construction bonds have been found to benefit certain unnamed third persons despite a lack of privity. *Lawson,* 115 Ind.App. at 461, 59 N.E.2d at 915; *Nash Engineering Co. v. Marcy Realty Corp.* (1944), 222 Ind. 396, 54 N.E.2d 263; *Knight & Jillson Co. v. Castle* (1909), 172 Ind. 97, 87 N.E. 976; *Ochs v. M.J. Carnahan Co.* (1906), 42 Ind.App. 157, 76 N.E. 788, *petition on rehearing,* 80 N.E. 163. If one brings himself within a class of persons intended to be protected by the bond, he may seek his remedy against the bond. *Lawson,* 115 Ind.App. at 462, 59 N.E.2d at 915. The difficulty is in determining whether a claimant is such a beneficiary. *Id.* In *Title Guaranty Co. v. State* (1915), 61 Ind.App. 268, 109 N.E. 237, *trans. denied,* a case involving a road contractor's bond, the court developed a test for making this determination:

> "The purpose, as expressed by the bond is to secure the payment of debts incurred in the prosecution of the work. Among such debts are those growing out of labor performed and material furnished. But if there are other debts, regardless of their nature or origin, that sustain such an intimate, immediate, and exclusive relation to the building of the road that it may be said that such debts were incurred in the prosecution of that work, they too are covered by the provisions of the bond literally interpreted."

*Id.* at 279, 109 N.E. at 24; *See Lawson,* 115 Ind.App. at 462, 59 N.E.2d at 915. In *Lawson,* the court adopted this test in determining the services of a materialman's employee did not bear an intimate, immediate, and exclusive relation to the building of a road and cautioned: "Nothing can be clearer, both upon principle and authority, than the doctrine, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract." *Lawson,* at 463, 59 N.E.2d at 916, *quoting Miller v. Stewart* (1824), 22 U.S. 680, 9 Wheat. 680, 6 L.Ed. 189. Therefore, to extend liability on a contractor's bond where privity is lacking, it appears necessary to demonstrate that the materials or labor used bear a close relationship to the project.

Furthermore, while unnamed materialmen may recover, as third party beneficiaries, on private and public bonds, case law generally requires that specific language be present in the agreement in order to permit recovery. *Greenfield Lumber & Ice Co. v. Parker* (1902), 159 Ind. 571, 65 N.E. 747; *Staples-Hildebrand Co. v. Metal Concrete Chimney Co.* (1916), 62 Ind.App. 592, 594–95, 112 N.E. 832, 833; *Knight,* 172 Ind. at 101–03, 87 N.E. at 977–78. Where there is no express promise in the contract or bond to pay for labor and materials, the general provision of the agreement guaranteeing faithful performance of the contract does not authorize recovery by third persons. *Knight,* at 102–03, 87 N.E. at 978. In order to hold a surety liable to a materialman there must be a contractual provision binding the contractor to pay for labor and material or language indicating that without payment the contract cannot be complied with. *Staples-Hildebrand,* 62 Ind.App. at 594–95, 112 N.E. at 833. Thus, in each case the question is one of determining the intention of the parties as expressed by their written agreement, "and does not arise upon any implied agreement or equitable considerations." *Knight,* 172 Ind. at 104–05, 87 N.E. at 978–79. *See Gonzales,* at 729; *Loper v. Standard Oil Co.* (1965), 138 Ind.App. 84, 90, 211 N.E.2d 797, 801; *Jackman Cigar Mfg. Co. v. John Berger & Son Co.* (1944), 114 Ind.App. 437, 445, 52 N.E.2d 363, 367. The contract must be considered in its entirety, including the circumstances surrounding the contracting parties at the time they executed the agreement. *Jackman,* at 445, 52 N.E.2d at 367.

In the present case, it does not appear that Mallory, Indiana Gas or Indiana Insurance intended to benefit Garco. The contract between Mallory and Indiana Gas provided that:

> "1. The Contractor agrees, as an independant contractor, to furnish all the labor and certain of the necessary tools, equipment, and/or materials to wit: La-

bor, tools, materials and other related items necessary to perform the following work."

Record at 358A, Exhibit G–1, p. 1. In *Staples-Hildebrand,* the Court of Appeals of Indiana found the provision that a contractor was to "furnish and deliver all the material" was not a promise to pay for the material, neither did it invoke liability on the part of the surety. *Staples-Hildebrand,* 62 Ind.App. at 595, 112 N.E. at 833. Clearly, the contract lacked both the specific promise to pay for labor and materials and the indication of any intention on the part of the parties to protect unnamed materialmen. The rental agreement for the backhoe and excavator was between Mallory and Garco. This agreement, which was to run for five years, was never executed and was obviously not for the Danville job alone. Therefore, Garco also lacks privity of contract and fails to demonstrate a specific close relationship to the Danville project which would compensate for the lack of privity. There is no contract between Garco and Mallory covered by the bond. Instead, the bond protects Indiana Gas, the only obligee.

Garco's claim must also fail because the backhoe and excavator are equipment which was intended for use over an extended period of time. While Indiana precedent is scarce, two cases from other jurisdictions, involving statutorily required public improvement bonds, demonstrate the general rule that bonds do not cover equipment. In *Rish v. Theo. Bros. Construction Co., Inc.* (1977), 269 S.C. 226, 233, 237 S.E.2d 61, 63, the South Carolina Supreme Court decided that rented construction equipment is not "materials" under a highway construction contract. The fact that the construction company did not keep the rented equipment was unimportant. Instead, the nature of the equipment—bulldozers, graders, trucks, tractors—was controlling. According to the court, this equipment was the sort that would have become part of the contractor's permanent repertoire of machinery. *Id.* at 231, 237 S.E.2d at 63. The Mississippi Supreme Court has also decided that public improve-

ment bonds do not cover heavy construction equipment which survives a particular job and can be used in the performance of other contracts. *Euclid-Mississippi v. Western Casualty & Surety Co.* (1964), 249 Miss. 779, 792, 163 So.2d 904, 909. This, according to the court, would include capital investments by the contractor in his basic plant. *Id.* at 790, 163 So.2d at 907. Instead, the court found the bond protected those who supplied material which became a permanent part of the improvement or was substantially consumed in the course of construction. *Id.* at 786, 163 So.2d at 906. However, the court added that renting large-scale equipment would prohibit a contractor from competing in the market and, therefore, most contractors only rented such equipment in special cases for short periods. Therefore, the court permitted recovery for maintenance of the equipment. *Id.* at 790, 163 So.2d at 908.

*Euclid-Mississippi* is distinguishable from the case at bar because Mallory rented the equipment for a sixty month period while the Danville project took only four months to complete. Clearly, Mallory did not rent the backhoe and excavator for the Danville job alone but intended to add this equipment to his permanent inventory—a capital addition. The lease of the equipment was not confined to the bonded project and therefore Mallory is further precluded from recovering on the bond.

On review, summary judgment is sustained when there is an absence of any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Wingenroth v. American States Insurance* (1983), Ind.App., 455 N.E.2d 968. Neither the contract nor the bond express an intention by the parties that the bond should benefit suppliers or materialmen. Furthermore, Garco was not a party to any contract which would permit it to recover on the bond. The only contract Garco might possibly lay claim to is the five year leasing agreement between Mallory and Garco which was never executed and was not for the Danville job

alone. Indiana Insurance has paid the sole obligee, Indiana Gas, almost the entire amount due on the bond. There exist no issues of material fact and we find that the trial court correctly applied the law in denying Garco's motion for summary judgment and granting Indiana Insurance's motion for summary judgment.

We therefore affirm the judgment of the trial court.

ROBERTSON, J., and YOUNG, J. (by designation), concur.