## ESTATE OF Carl W. CARNAHAN, Plaintiff-Appellant,

### v.

## ISM, INC., Defendant-Appellee.

### No. 64A03–8701–CV–22.

Court of Appeals of Indiana, Third District.

July 30, 1987.

Rehearing Denied Sept. 18, 1987.

---

Timothy R. Sendak, Sendak, Sendak & Luke, Crown Point, for plaintiff-appellant.

W. Patrick Downes, Galvin, Galvin & Leeney, Hammond, for defendant-appellee.

HOFFMAN, Judge.

On December 24, 1982, Florie Carnahan and her husband, Carl W. Carnahan, were involved in an automobile collision with an automobile driven by Douglas S. Wade (Wade), an employee of ISM, Inc. (ISM). Carl Carnahan was killed and Florie Carnahan suffered serious injury as a result of this accident. Wade was arrested for drunk driving and later pled guilty to driving while intoxicated and thereby causing Carl Carnahan's death.

In June 1983, the Estate of Carl Carnahan (Estate) executed a document entitled "Covenant Agreement" in which it agreed that in exchange for $25,100.00 it would not pursue further legal action against Wade or "his principal or master, or any of his agents or servants" for injuries or damages arising out of the December 24 automobile accident.

On December 21, 1984, the Estate filed an action against ISM and others alleging that on December 24, 1982, ISM proximately caused the death of Carnahan by:

A.  Failing to adequately supervise Wade;

B.  Allowing and encouraging Wade to become intoxicated; and

C.  Making intoxicating beverages available to Wade just prior to the automobile accident.

ISM then filed a motion for summary judgment asserting that Carnahan's suit is barred by virtue of the Covenant Agree-

ment executed in June 1983. The trial court agreed and granted summary judgment for ISM. The Estate appeals.

### Issue

Did the trial court err in granting summary judgment based on a covenant agreement in which the Estate agreed not to sue Wade or "his master or principal"?

### Standard of Review

In reviewing a grant of summary judgment we will use the same standard of review applicable to the trial court.

Ind.Rules of Procedure, Trial Rule 56(C); *First Sav. and Loan Ass'n v. Treaster* (1986), Ind.App., 490 N.E.2d 1149.

We must examine whether there exists a genuine issue as to any material fact and whether the movant is entitled to summary judgment as a matter of law. *Duran v. Komyatte* (1986), Ind.App., 490 N.E.2d 388. While we stand in the shoes of the trial court liberally construing all evidence in favor of the non-movant and resolving against the movant all doubts as to the existence of a genuine issue, the party opposing the motion for summary judgment must present adequate factual evidence to controvert the moving party's declaration that no material factual issue exists. *M.R. by Ratliff v. Meltzer* (1986), Ind.App., 487 N.E.2d 836, 838. We must reverse a grant of summary judgment if the record discloses an unresolved issue of material fact or an incorrect application of the law to those facts.

T.R. 56(C); *Richards v. Goerg Boat & Mtrs. Inc.* (1979), 179 Ind.App. 102, 384 N.E.2d 1084.

We believe the trial court's grant of summary judgment in favor of ISM was appropriate and reflects a correct application of the law to the facts.

### Discussion

The Estate argues that the trial court should not have granted summary judgment for ISM because the covenant agreement at issue was not made for ISM's benefit. ISM gave no consideration for the agreement, the Estate argues, was not a party thereto, and had no knowledge of the existence of the covenant. Further, the Estate argues, the fact that it chose to use a covenant not to sue, rather than a release, in a settlement with Wade which only partially compensates the Estate, is clearly indicative of its intent to seek further redress against persons such as ISM who were not parties to the covenant agreement. To support its argument, the Estate focuses on a quotation out of context from the Court's opinion in *Number One Beverage, Inc. v. Miller Brewing Co.* (1982), Ind.App., 437 N.E.2d 508, 513, where Judge Neal stated:

"Thus, where a covenant not to sue agreement is executed between a plaintiff and one of several tort-feasors, the plaintiff still may proceed against the other tort-feasors who were not party to the agreement."

473 N.E.2d at 513 (citing *Cooper v. Robert Hall Clothes, Inc.* (1979), 271 Ind. 59, 390 N.E.2d 155).

The point of the quotation urged by the Estate is to distinguish between the traditional effect of giving a covenant not to sue and giving a general release. We are not here concerned with that distinction. No one has asserted the agreement given by the Estate was intended to be a general release.

The appellee simply assumes it to be what it was: a covenant that the Estate would not sue either Wade or his principal or master.

The Estate's argument that ISM paid nothing for the covenant is beside the point. We have long recognized the validity of third-party beneficiary contracts. Those who are not a party to a contract may enforce the contract by demonstrating that they are third-party beneficiaries who were intended to be protected under the agreement by the imposition of a duty in their favor. *Garco Indus. Equipment Co., Inc. v. Mallory* (1985), Ind.App., 485 N.E.2d 652, 654. The Court in *Mogensen v. Martz* (1982), Ind.App., 441 N.E.2d 34, 35,

provided the standard for determining whether a party is a third-party beneficiary when it stated:

> "A third party beneficiary contract requires first, that the intent to benefit the third party be clear, second, that the contract impose a duty on one of the contracting parties in favor of the third party, and third, that the performance of the terms necessarily render to the third party a direct benefit intended by the parties to the contract."

As third-party beneficiaries, they may recover under the contract even though they had no knowledge of the agreement at the time it was made. *Id.* The intent of the parties to benefit the third party is the controlling factor and this may be shown "by specifically naming the third party or by other evidence."

*Garco, supra;*

*Gonzales v. Kil Nam Chun* (1984), Ind. App., 465 N.E.2d 727, 729.

That "other evidence" may be a provision naming a class of individuals which includes the party claiming third-party beneficiary status. *See, Mogensen v. Martz, supra,* 441 N.E.2d at 34, 35.

We will determine the intent of the parties from the four corners of their agreement and where the language is unambiguous, we will give such language conclusive effect as to the intent of the parties. *Turnpaugh v. Wolf* (1985), Ind.App., 482 N.E.2d 506. We believe the language of the covenant unequivocally indicates that the parties intended to protect not only Wade but ISM from legal action arising out of the December 24, 1982 auto accident.

The agreement is entitled "Covenant Agreement" which is followed by a parenthetical statement, "This is not a General Release." The covenant also provides that the parties, in entering into such an agreement, desired to "forever set at rest the differences so existing between them, but in such a way that such action shall not impair or affect any claim of [the Estate] against any person, firm or corporation *other than* [Wade], *his principal or mas-*

*ter, ... for ... injury or damage...."* (Emphasis added.) After acknowledging the Estate's receipt of $25,100.00 from Wade in consideration for the Estate's relinquishment of its causes of action, the Covenant Agreement recited:

> "[T]he undersigned party of the first part [the Estate] hereby covenants and agrees for himself, his heirs, executor or executors, administrator or administrators, respectively, to and with the said party of the second part that neither he, they, nor any of them will ever sue or bring any action against the said party of the second part [Wade], *his principal or master, or any of his agents or servants,* on account of injuries or damages, or both, to him occasioned by, or growing out of the accident above described." (Emphasis added.)

The agreement was, thus, expressly intended to bar any further action against persons listed against whom the Estate may have had a cause of action for Carnahan's death. Specifically, "his principal or master, or any agents or servants," indicates that not only Wade but others, including ISM, were to be provided protection from suit by the Estate. We believe that "principal" and "master," in light of their ordinary meanings, unambiguously refer to Wade's employer at the time of the automobile accident, namely ISM. Further, there is no language in the body of the agreement itself which reveals an effort by the Estate to release only Wade while reserving a right of action against ISM and others.

The covenant before us clearly confers a benefit on ISM and imposes a duty on the Estate since it obligates the Estate to forego suit against Wade's "principal or master." Further, this provision, along with Wade's tender of and the Estate's acceptance of $25,100.00 in consideration for the Estate's agreement not to sue Wade or his "principal or master" are indicative of the parties' intention to confer a direct benefit on ISM. Hence, ISM is a third-party beneficiary to the agreement and can enjoy the

immunity from suit promised by the Estate in exchange for the $25,100.00 tendered by Wade.

We find that the express language of the parties' agreement conclusively establishes the parties' intention to protect ISM from suit by the Estate for Carnahan's death resulting from the December 1982 automobile collision. Further, we have found no genuine issues as to any material facts in the present case and agree with the trial court's grant of summary judgment. Hence, we affirm.

Affirmed.

GARRARD, P.J., and STATON, J., concur.